No. 82-85

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

IN THE MATTER OF RONALD C. WYSE,
an attorney and counselor at law,
                    Respondent.

_____

Commission on Practice:

     Arnold Huppert, Jr, Secretary, Livingston, Montana

Respondent:

     Ronald C. Wyse, Missoula, Montana

_____

                  Submitted:    September 27, 1982

                    Decided:    September 18, 1984

Filed:   SEP 18 1984

_____
                       Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We conclude that Ronald C. Wyse, an attorney authorized to practice law in the State of Montana, should receive a public censure pursuant to a written recommendation made to us by the Commission on Practice of the Supreme Court of the State of Montana. The facts giving rise to our decision and the reasons for our conclusion follow.

Ronald C. Wyse was admitted to practice law in Montana on October 27, 1977. At the time of the hearing in 1982, before the Commission on Practice, he was employed as a professor in the Law School at the University of Montana, Missoula, Montana. He was also an associate of a law firm in Missoula.

At about 4:30 p.m., on October 28, 1980, Wyse responded to a telephone call from Alan Robbins, calling from California. Robbins indicated that he was engaged in politics in California, that his election was coming before the voters in California shortly, and that he was about to be indicted by a grand jury in California, on the charge of unlawful intercourse, which in California is consensual, but with a woman under the age of consent.

Robbins informed Wyse that the woman involved had lived in Missoula, in 1976 and 1977, and that the same young woman had been involved in some sort of similar charge. Wyse testified that Robbins vociferously denied the charges made against him by the young woman and in the telephone call, he retained Wyse to investigate the young woman's background for information which might lead to the dropping of the charges against Robbins in California.

Wyse had never met or known Robbins prior to the time that he was retained to represent him. Following the telephone conversation, Wyse used the local telephone book and found nothing therein relating to the names that Robbins had supplied him. Wyse then looked in the card file of the law firm with which he was associated and found in the card file of closed matters a reference to a file that had a similar name, described by Wyse as "simply a name, a file number." He went to the firm's closed file, which was a simple manila folder with a name on it, opened it, and found it to be a neatly organized file with documents fastened on one side. In examining the firm file, Wyse found documents which tended to corroborate what Robbins had told him, that there had been a charge by this young woman of sexual harrassment by her stepfather. The Missoula firm with which Wyse was associated had been hired by the mother in connection with the charge. The nature of the proceeding was to have the young woman declared an abused and neglected child. The file revealed that the State, by its own motion, had dismissed the charge and had released the custody of the young woman to her natural mother. From this, Wyse concluded that the young woman's charges against the stepfather had been false.

Robbins had told Wyse that the grand jury was scheduled to be impaneled on the afternoon of October 30, 1980, and Wyse felt it was necessary to proceed to get the information about the young woman into Robbins' possession as quickly as possible. It was Wyse's intention that the information be delivered to the California prosecutor with the thought that if the prosecutor had such information, any possible charges

involving the young woman, against Robbins, would be suspended or dismissed.

Wyse was generally aware that matters involving juveniles are protected. He did not consult the statutes to find the specific provisions at the time. He testified that "I probably was wrong in not looking up the statute, and yet in my mind, I knew the statute was there and I had a pretty good idea what it said."

Wyse talked to Robbins by telephone a second time. He told Robbins that "there was some kind of information there." They discussed the fact that this kind of information is protected and that they would have to get a court order before it could be used in a public manner in the defense-in-chief of the particular action. Nevertheless, they thought if the information could be communicated privately to the district attorney's office in California, he, as a rational prosecutor, might think his case not as strong as it appeared, investigate it, and eventually dismiss the cause.

On the morning of October 29, 1980, Wyse went to the courthouse in Missoula, first to the office of the Clerk of the District Court. He identified himself to the clerk personnel as an attorney associated with a Missoula law firm and asked to see the file which he identified by its court file number. Wyse testified: "The lady behind the counter went to their file cabinet, opened it up, pulled out the file, turned to me and said, 'This is a juvenile matter.' I said, 'Yes.' She then turned to someone in the back of the room and said, 'This individual is from [the Missoula law firm], they were involved in the case before, may I let them see the file?' And the answer was, 'Yes.' They let me see

- 4 -

the file. I compared it, I did get certified copies of a couple of documents that contained the inferences I previously mentioned."

Wyse then went downstairs in the courthouse to the county attorney's office to see the deputies who handled juvenile matters. They were busy, so he went across the hall to the receptionist's office, where he found a young woman who had been a receptionist formerly at the law firm with which he was associated, and who was now acting as a legal secretary in the county attorney's office. He told her that his firm had represented the parents in a juvenile matter sometime before, that he was investigating a matter in California that involved a girl, and he wanted to see if his firm file was complete. She procured the file; Wyse looked at it, found a brief summary of a psychologist's report, and obtained from the secretary a copy of that. He sent a copy of that report to Robbins and to Robbins' attorney in California.

In his contempt conviction, which we will later describe, the record of which is before us in this cause, the secretary testified that when Wyse talked to her about the file he had told her that he was with the Missoula law firm, that the law firm had represented the parents of the child, that the young girl was living in California, and that, because she was under age in the State of California, the file was still open and needed to be updated. On the basis of that representation, the secretary testified that she surrendered the contents of the file to Wyse. Wyse denied at the Commission hearing that he made such representations, although, he admitted that "in retrospect, yes, I think there is a distinct possibility that she may have been led to

believe something. I am certainly not saying that she lied under oath, that is not the question at all, but I don't believe I intentionally misled her."

Wyse, by telephone and by mail, divulged to Robbins and to Robbins' defense counsel the information that he had obtained from the file of the firm with which he was associated and a copy of the document that he had obtained from the county attorney's file.

When the Missoula county attorney discovered that Wyse obtained the information from his files and those of the court, he petitioned the District Court for an order directing Wyse to appear and show cause why he should not be held in contempt of court. Wyse was found guilty of contempt by the District Court, and the decision of the District Court was reviewed by us in Wyse v. District Court of the Fourth Judicial District in and for Missoula County (1981), 195 Mont. 434, 636 P.2d 865. This Court, though divided, upheld on review the finding of contempt of court.

The Commission on Practice filed its complaint against Wyse in this Court on March 19, 1982. On September 20, 1982, the Commission filed with us findings of fact, conclusions of law and recommendation. On September 27, 1982, Wyse filed his answer in opposition to the findings, conclusions and recommendation. Thus, the matter comes before us for final decision.

Wyse urges the dismissal of the charges against him on these grounds:

1. The findings are incorrect in stating that his law firm represented the young woman.

2. There is no evidence before the Commission on Practice that he discussed this case with the law students at the University of Montana.

3. His due process rights have been violated by the proceedings before the Commission on Practice.

4. The term "dissemination" as used in section 41-3-205, MCA, is not synonymous with the term "public disclosure" and that he made no public disclosure of the information.

5. The right of Robbins to effective assistance of counsel overrides any considerations of confidentiality in juvenile proceedings.

We look first at the constitutional issues raised by Wyse. His due process argument is that the Commission on Practice is the prosecutor, judge and jury and as such, these proceedings deprived him of due process. Wyse relies on the holding of In Re Schleslinger (1961), 404 Pa. 584, 172 A.2d 835. There, the Pennsylvania Supreme Court found a denial of due process in the disbarment proceedings of an attorney where the functions of prosecutor, judge and jury were vested in a single committee. Schleslinger was charged with being a member of the Communist party in violation of the oath, which he took when he was admitted to practice, that he would support the Constitution of the United States. Under Pennsylvania proceedings, a committee of 15 lawyers appointed by the court served as the committee for discipline, and on a vote of the 15 members, it assigned the charges against Schleslinger to a subcommittee of 3 persons to hear the case. The subcommittee took evidence, and made its findings that Schleslinger was a member of the Communist party, that his membership violated his oath to uphold the Constitution of

the United States, and ordered his disbarment. The Pennsylvania Supreme Court, in a divided decision, reversed the disbarment.

The procedure which has been applied to Wyse cannot be compared with the procedure that was followed in Schlessinger. Our Commission on Practice acted under order no. 10910, issued by this Court on January 5, 1965. The rules regarding proceedings before the Commission on Practice and before us in disciplinary matters were amended by us in our order of August 23, 1983, also in cause no. 10910 of this Court. In each set of rules setting forth proceedings before the Commission on Practice, this Court has been careful to state that "it possesses original and exclusive jurisdiction and responsibility under Art. VII, § 2(3), 1972 Mont. Const., and the provisions of Ch. 61, Title 37, MCA, in addition to its inherent jurisdiction, in all matters involving admissions of persons to practice law in the State of Montana and the conduct and disciplining of such persons." Under the 1965 set of rules, all questions relating to discipline are to be finally decided only by this Court. Under the 1983 rules, this Court continues to assert its exclusive jurisdiction in all matters involving public censure, disbarment or suspension. Under both sets of rules, and particularly under the rules applicable to Wyse, the proceedings before the Commission on Practice are designed to establish a record upon which this Court must act. The respondent attorney in such proceedings is given full right of representation by counsel, confrontation of witnesses, the adducement of evidence in his own behalf and the right fully to argue the merits on the facts and law. When the report from the Commission reaches this Court, its findings of fact

- 8 -

are not attended by any special binding effect upon us and we have always maintained the right to accept or reject the findings of fact made by the Commission on Practice and to accept, reject or modify its recommendations for discipline. It is important to note that in this case, Wyse has not pointed out any prejudice resulting to him from a purported denial of due process, except that he disagrees with the findings and conclusions of the members of the Commission.

The discipline of lawyers is constitutionally and inherently imposed in the Supreme Court of this state. Rather than depriving lawyers of due process, our rules provide for an orderly method of preserving to the attorney accused before the Commission, and later before us, his denials and defenses to the charges made against him in the widest latitude. We find no deprivation of due process affecting Wyse's rights in this cause.

Wyse also contends that since his law firm did not represent the young woman, but rather her mother who was seeking a return of her custody, that no disclosure of confidential information of a client is involved in this case. The Commission on Practice found that Wyse had violated DR 4-101 of the Canons of Professional Ethics which relates to the preservation of confidences and secrets of a client. (See Canons of Professional Ethics, Vol. 160, Montana Reports, promulgated and effective May 1, 1973.)

The proceeding in which Wyse's law firm represented the mother was brought by the State Department of Public Welfare to have the young woman declared an abused or neglected child under section 41-3-404, MCA. The mother of the young woman retained the law firm to oppose the action and to retain

custody of the young woman. The State Department of Public Welfare eventually dismissed the action.

If we regard the mother as the client of the law firm, and not the child, Wyse, by utilizing information gained by the law firm and by him as a member of the law firm nonetheless violated DR 4-101. The rule terms as "secret" information gained in the professional relationship, the disclosure of which would be embarrassing or would be likely to be detrimental to the client. The rule further provides that "secret" information may be revealed by a lawyer with the consent of the client affected, but only after a full disclosure to the client. Wyse made no effort to consult with the mother, or to obtain a consent to release the information he had obtained. We find that he violated DR 4-101.

The statute respecting confidentiality in juvenile proceedings is section 41-3-205, MCA, which follows:

> "Confidentiality. (1) The case records of the department of social and rehabilitation services, and its local affiliate, the county welfare department, the county attorney and the court concerning actions taken under this chapter and all records concerning reports of child abuse and neglect shall be kept confidential except as provided by this section. Any person who permits or encourages the unauthorized dissemination of their contents is guilty of a misdemeanor.
>
> ". . .
>
> "(3) Records may be disclosed to a court for in camera inspection if relevant to an issue before it. The court may permit public disclosure if it finds such disclosure to be necessary for the fair resolution of an issue before it . . . ."

Wyse submits that in the contempt proceedings in the District Court, and again before this Court, he had contended that the words "unauthorized dissemination" and "public disclosure" are conflicting and that he did not violate the

statute on confidentiality. He also argues, as he did in the contempt case, that the right of Robbins to effective assistance of counsel overweighs any provisions of statute for confidentiality in juvenile proceedings.

Wyse also states that he raised the same issues respecting section 41-3-205, MCA, and that these were not treated by this Court in its decision upholding his contempt. In effect, in the disbarment proceedings, he is seeking again to argue the issues that were before this Court in the contempt proceedings. It is enough to say that under the facts of this case, which are relatively undisputed, Wyse made an "unauthorized dissemination" of the contents of the documents contained in the files of the county attorney and of the court and in doing so, he was in contempt of court.

The provisions relating to "public disclosure" are not synonymous with nor intended to be synonymous with the term "unauthorized dissemination." Any unauthorized dissemination, public or private, is prohibited under section 41-3-205(1). The term "public disclosure" comes into play if request is made to the court to permit the same and the court finds such public disclosure necessary for the fair resolution of an issue before it.

Wyse also contends that the statute on confidentiality and juvenile matters is vague and overbroad. This issue is answered in Wyse, 636 P.2d 865, 867, where we stated:

> "Relator cannot argue that the statute is vague when he admits knowing that this type of statute exists and admits knowing that a court order is required to obtain the information in the file."

Wyse's final contention is that Robbins' rights overweighed the confidentiality statute. He relies for authority on Davis v. Alaska (1974), 415 U.S. 308, 319-320,

94 S.Ct. 1105, 39 L.Ed.2d 347. <u>Davis</u> was a case where the trial court refused a defendant the right of cross-examination of a juvenile with a record of burglary, to show the juvenile's possible bias as a probationer and as a possible burglar. The United States Supreme Court held that the right of confrontation is paramount to any state policy affording protection to juvenile offenders.

We are not confronted here with a <u>Davis</u> situation. We do not have a defendant here seeking to cross-examine a witness on information which was foreclosed from him by a court order. No application was made here to the court for the right to disseminate, privately or publicly, the information in the juvenile proceedings. The zeal of a lawyer to protect his client is not a sufficient excuse for the abuse of the confidentiality provisions of section 41-3-205, MCA, without application to the court for permission to disseminate the information.

Wyse points out that the information in the juvenile files had already been transmitted by the county attorney's office to the office of the prosecutor in California. That may well be. How such information was disseminated to the authorities in California is not within the purview of this cause relating to his violation of the statute on confidentiality.

We determine that the actions of Wyse in this situation, constituting as it does a misdemeanor violation under our statutes, and, more seriously, a contempt of the court which we have upheld, requires discipline. We reach this decision without regard to the finding of the Commission on Practice that Wyse had discussed the case with his law students. Wyse is correct in contending that there is no record before the

Commission itself relating to discussions with law students. Irrespective of that, we have here a lawyer who, while knowing that a statute existed protecting the confidentiality of juvenile proceedings, gained access to the law firm's, the clerk of court's and the county attorney's files, by using the fact that he was associated with a law firm which represented a party in the juvenile proceedings. He obtained therefrom documents from these files that he transmitted, without authorization, to persons out of the State of Montana. We are unable to condone the actions of Wyse by dismissal of the charges or by ordering private censure. His actions require at least a public censure before this Court.

IT IS THEREFORE ORDERED THAT:

On recommendation of the Commission on Practice of the Supreme Court of the State of Montana, Ronald C. Wyse be given a public censure for his actions in connection with the juvenile proceedings in Missoula on October 28-29, 1980, in the courtroom of this Court in the Justice Building, Helena, Montana, at a time and on a date to be fixed by a future order of this Court.

_____
Justice

_____
Hon. Russell C. McDonough
District Judge

_____

_____
Justices

- 13 -

_____
Hon. Henry Loble, District
Judge

_____
Hon. Leonard Langen,
District Judge


Mr. Justice Daniel J. Shea dissents and will file a written
dissent later.