CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
¶1 These matters are before the Court following the filing of formal complaints against Morton B. Goldstein and Scott A. Albers before the Commission on Practice, and the Commission’s subsequent filings of findings, conclusions, and recommendations for discipline of those attorneys with this Court. The cases were consolidated for oral argument on common issues concerning the constitutionality of the structure and function of the Commission on Practice.
¶2 In this Opinion, we address only those issues of general import to attorney disciplinary proceedings which were orally argued before the Court. We do not here discuss the Commission’s findings, conclusions, and recommendations as to the particulars of the Goldstein or Albers case. The issues which have been raised as to those matters, and the Court’s final determination as to the appropriate discipline, if any, of Goldstein and Albers, will be discussed in separate Orders or Opinions to be issued at a later date.
¶3 The constitutional issues discussed herein are:
¶4 1. Does Rule 9 of the Rules on Lawyer Disciplinary Enforcement deny the respondent attorneys due process of law, the right to an impartial tribunal, and equal protection under the law?
¶5 2. Were Goldstein and Albers denied their constitutional rights by virtue of the confidentiality provisions of Rule 13 of the Rules on Lawyer Disciplinary Enforcement?
Background on the Rules on Lawyer Disciplinary Enforcement
¶6 This Court adopted the Rules on Lawyer Disciplinary Enforcement which are currently in effect in 1983, replacing substantially similar rules which had been in effect since 1965 and had been adopted pursuant to the Court’s authority under the 1889 Montana Constitution. The 1983 Rules were promulgated pursuant to the Court’s rule-making authority under Article VII, Section 2(3) of the Montana Constitution:
[The Supreme Court] may make rules governing ... admission to the bar and the conduct of its members.
The Court which adopted the Rules now in effect did not include any of the Court’s present members.
*496 ¶7 The Rules provide that the Court shall appoint an eleven-member commission known as the Commission on Practice of the Supreme Court of the State of Montana. Eight members of the Commission are lawyers appointed from eight designated areas of the State. Those appointees are selected from lists from each area of the three attorneys who received the highest number of votes in an election by the area resident members of the State Bar of Montana. The Court also appoints three nonlawyer members to the Commission. The members of the Commission elect from its lawyer members a chairperson, a vice chairperson, and a secretary.
¶8 Under the Rules, the Commission performs the initial consideration of complaints against attorneys for violation of the canons of professional ethics or rules of professional conduct adopted by this Court. The Commission is empowered, inter alia, to adopt rules or policies providing for procedural rules not in conflict with the Rules adopted by this Court, to administer admonitions and private censures, and to conduct formal disciplinary proceedings as provided in the Rules. The Commission also possesses authority to appoint investigators to investigate complaints and report to the Commission.
¶9 The procedure followed in handling a complaint against a Montana attorney under the Rules and the additional procedures adopted by the Commission is, in general, as follows: Upon receipt of a complaint against a Montana attorney, the Commission sends a copy of the complaint to the attorney against whom the complaint is made. The attorney is given time to submit a written reply to the complaint. The complainant is then given the opportunity to point out any factual errors in the reply. Thereafter, the full Commission meets to conduct a preliminary consideration of the complaint. If it appears that the facts do not warrant disciplinary action, the Commission dismisses the matter and so notifies the complainant and the attorney involved.
¶10 If, on the other hand, the complaint is not dismissed, the Commission may refer the matter either to a grievance committee or to an investigator. Because grievance committee proceedings are not at issue here, we shall not discuss them further.
¶11 The Rules on Lawyer Disciplinary Enforcement authorize the Commission to appoint as investigators either lawyers or nonlawyers. Investigators generally serve in a volunteer, or pro bono, capacity. The Commission has adopted a procedure in which four lawyers located in different parts of the State, who are themselves appointed by the president of the State Bar of Montana, assist the Com *497 mission in recruiting investigators. Each of these four lawyers appointed by the president of the State Bar is charged with recruiting lawyers to serve as investigators for disciplinary matters in a given area of the State. When the Commission has determined that an investigator should be appointed, it notifies one of the four lawyers, who then secures an investigator for that particular complaint.
¶12 Upon completion of an investigation, the investigator submits a written report to the Commission. The Commission then determines what type of disciplinary action, if any, to pursue. The Commission may vote to administer a private admonition to the attorney. In such cases, the matter is then deemed terminated.
¶13 If the Commission instead determines that formal disciplinary proceedings should be initiated against the attorney, it appoints special counsel to prepare and file a formal complaint setting forth the nature of the alleged misconduct. The investigating attorney may or may not be the attorney who is appointed as special counsel. The complaint subsequently drafted by special counsel is filed with the Commission and with the Clerk of the Montana Supreme Court, and is served with a citation upon the attorney against whom the complaint is filed. Under the present Rules on Lawyer Disciplinary Enforcement, only at this point do the proceedings against the attorney become public.
¶14 The attorney against whom the formal complaint is filed is granted twenty days to prepare, file, and serve a written response to the formal complaint. Then, the Commission must give at least twenty days’ notice of the date, time, and place set for a hearing on the complaint. Discovery may be undertaken at this time.
¶15 At the hearing on the complaint, the attorney is entitled to be represented by a lawyer, to cross-examine witnesses, and to present evidence. Special counsel presents the case that disciplinary action is justified. The hearing is recorded and is conducted, in general, in accordance with the practice and the trial of civil actions. The full Commission sits as the finder of fact.
¶16 Following the hearing, the Commission submits to the Court a transcript of the hearing and a report in which it sets forth its findings, conclusions, and recommendations. The attorney is served with the Commission’s report and is allowed time to file written objections thereto; special counsel is then allowed time to file a brief in opposition to the objections.
¶17 At that time, the disciplinary proceeding is considered submitted to the Court, which, under the Preamble to the Rules, retains *498 “original and exclusive jurisdiction and responsibility ... in all matters involving admission of persons to practice law in the State of Montana, and the conduct and disciplining of such persons.” The Court may set the matter for oral argument and may hold additional hearings. Thereafter, the Court may dismiss the complaint or impose such discipline as it deems appropriate, including private censure, public censure, or suspension or disbarment of the attorney from the practice of law in Montana.
Issue 1
¶18 Does Rule 9 of the Rules on Lawyer Disciplinary Enforcement deny the respondent attorney due process of law, the right to an impartial tribunal, and equal protection under the law?
¶19 Rule 9 of the Rules on Lawyer Disciplinary Enforcement sets forth the procedure followed by the Commission on Practice, as outlined above. Goldstein and Albers assert that this procedure violates their rights to due process, to an impartial tribunal, and to equal protection in that it improperly vests both investigatory and adjudicatory functions in one body-the Commission on Practice. The bulk of Goldstein’s and Albers’ arguments, and thus the bulk of our discussion, relate to whether Rule 9 violates the constitutional right to due process of law.
¶20 This Court considered a similar challenge to Montana’s lawyer discipline system in Matter of Wyse (1984), 212 Mont. 339, 688 P.2d 758. In that case, attorney Wyse argued that because the Commission on Practice acted as prosecutor, judge, and jury in proceedings before it, he was deprived of due process.
¶21 This Court disagreed. The Court explained that “the proceedings before the Commission on Practice are designed to establish a record upon which this Court must act.” Wyse, 212 Mont. at 346, 688 P.2d at 762. The Court pointed out that it retains exclusive jurisdiction in all matters involving public censure, disbarment, or suspension. It further pointed out that under the rules, the respondent attorney was given full rights of representation by counsel, confrontation of witnesses, the adducement of evidence in his own behalf, and the right to fully argue the merits on the facts and the law. Finally, the Court pointed out that Wyse had not identified any prejudice resulting to him from a purported denial of due process, except that he disagreed with the findings and conclusions of the Commission. The Court found no deprivation of due process. Wyse, 212 Mont. at 346, 688 P.2d at 762.
*499 ¶22 Although the Wyse case was prosecuted under rules of disciplinary enforcement which have since been superseded, the Rules on Lawyer Disciplinary Enforcement currently in effect had been adopted by the time this Court heard that case. In connection therewith, the Court specifically noted that the due process protections which it identified under the rules which controlled in Wyse continue to be provided under the then-newly-adopted Rules on Lawyer Disciplinary Enforcement. Wyse, 212 Mont. at 346, 688 P.2d at 762.
¶23 Goldstein and Albers cite a 1993 study by the American Bar Association Standing Committee on Professional Discipline which suggested that in order to avoid presenting an appearance of unfairness, full-time disciplinary counsel should be appointed in Montana. The ABA committee also suggested that the Commission should be divided into separate panels for reviewing and hearing proceedings in each case before it. However, the ABA committee made no determination, and had no authority to do so, as to the constitutionality or lack thereof of the present system of lawyer discipline in Montana. We are not convinced that Montana’s lawyer discipline system is unconstitutional merely because it may be possible to improve the system.
¶24 Our position is supported by an Opinion of the United States Supreme Court. In Withrow v. Larkin (1975), 421 U.S. 35, 43 L.Ed.2d 712, 95 S.Ct. 1456, the Court upheld the constitutionality of an administrative disciplinary system for Wisconsin physicians which combined investigatory and adjudicatory functions. The Court noted that bias in a decision maker is not presumed and must be proven, and that “the case law, both federal and state, generally rejects the idea that the combination (of) judging (and) investigating functions is a denial of due process.” Withrow, 421 U.S. at 47 and 51, 95 S.Ct. 1456 (citation omitted).
¶25 The Withrow Court termed “untenable” the argument that bias automatically arises from a combination of investigatory and adjudicatory functions. Withrow, 421 U.S. at 55, 95 S.Ct. 1456. The court reasoned:
Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge’s presiding over the criminal trial and, if the trial is without a jury, against making the nec *500 essary determination of guilt or innocence. Nor has it been thought that a judge is disqualified from presiding over injunction proceedings because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction. It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law. We should also remember that it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around.
Withrow, 421 U.S. at 56-57, 95 S.Ct. 1456.
¶26 The procedure for Montana attorney discipline is more protective of the licensee than the one found constitutional in Withrow in that the entity which allegedly improperly combines functions in the Montana lawyer discipline system, the Commission, makes only recommendations for discipline. In Withrow, the entity which combined prosecutorial and adjudicatory functions also had the authority to suspend the physician’s license. Withrow, 421 U.S. at 37, 95 S.Ct. 1456. As noted in Wyse, and as clearly provided under the Rules on Lawyer Disciplinary Enforcement, this Court has taken upon itself the sole responsibility to adjudicate lawyer ethical violations.
¶27 The Withrow Court held, however, that the special facts and circumstances of a case in which investigatory and adjudicatory functions were combined may justify a conclusion that the risk of unfairness from the combination of functions is intolerably high in that particular case. Withrow, 421 U.S. at 58, 95 S.Ct. 1456. Although Goldstein and Albers raise this specter, they have made no allegations of specific facts and circumstances which would overcome the presumption of honesty and justify a conclusion that, in either of these cases, the risk of unfairness from the combination of functions is intolerably high or that they have been denied their rights to impartial tribunals.
¶28 Goldstein, Albers, and some amici maintain that attorneys should be accorded the same procedural protections as are other licensed professionals in the State of Montana, whose professional discipline proceedings are governed by the Uniform Professional Licensing and Regulation Procedures set forth at Title 37, Chapter 1, *501 part 3, MCA. This is the apparent centerpiece of their equal protection argument.
¶29 Goldstein and Albers point out that under the Uniform Professional Licensing and Regulation Procedures, the persons who sit on a screening panel to determine whether there is reasonable cause to believe that disciplinary procedures are justified must not thereafter participate in the final decision in the case. See § 37-l-307(l)(e), MCA. Goldstein and Albers cite that as a due process protection. The Commission responds that the present lawyer discipline system in which a majority of the full 11-member Commission, including both lawyers and nonlawyers of various backgrounds, must agree that a formal complaint against an attorney is justified provides more protection to the respondent attorney than would a system in which a 3-member subcommittee was allowed to make that critical determination. We agree. ¶30 There are other ways in which the Rules on Lawyer Disciplinary Enforcement may offer the licensee more protections than do the Uniform Professional Licensing and Regulation Procedures. For example, the Montana Administrative Procedure Act, under which adjudicative proceedings in licensing matters are held, see § 37-1-310, MCA, allows the agency to select the hearing examiner to conduct the disciplinary hearing. See § 2-4-611(1) and (2), MCA. The findings of that agency-selected hearing examiner are difficult to overturn. See § 2-4-621(3), MCA (“the agency ...may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law”) and § 2-4-704, MCA (regarding judicial standards of review of agency decisions). In contrast, this Court exercises de novo review over the findings of the Commission on Practice, f 31 [1] We agree that attorneys confronted with proceedings which may result in the loss of their licenses to practice their profession are entitled to due process, as are other professionals faced with such proceedings. Goldstein and Albers have cited no authority, however, stating that either equal protection or due process requires that identical procedures must be followed in all types of professional disciplinary proceedings. The United States Supreme Court has indicated to the contrary, noting in Withrow that “the incredible variety of administrative mechanisms in this country will not yield to any single organizing principle.” Withrow, 421 U.S. at 52, 95 S.Ct. 1456.
*502 ¶32 We conclude that neither Goldstein nor Albers has established that the procedure for handling disciplinary complaints as set forth under Rule 9 of the Rules on Lawyer Disciplinary Enforcement denies a respondent attorney due process of law, the right to an impartial tribunal, or equal protection under the law.
Issue 2
¶33 Were Goldstein and Albers denied their constitutional rights by virtue of the confidentiality provisions of Rule 13 of the Rules on Lawyer Disciplinary Enforcement?
¶34 Rule 13 of the Rules on Lawyer Disciplinary Enforcement provides:
A. Confidentiality. All disciplinary proceedings which are prior in time to the filing of a formal complaint with the Clerk of the Supreme Court and all documents in connection therewith shall be confidential.
B. Public Proceedings. Upon the filing of a formal complaint with the Clerk of the Supreme Court in a disciplinary matter, or upon the filing with the Clerk of the Supreme Court of a petition for reinstatement, the proceedings before the Commission shall be public except for:
(1) deliberations of the Commission;
(2) information or proceedings with respect to which the Commission or Supreme Court has issued a protective order.
C. Violation. Violation by any person of any confidential information under these rules shall be punishable as a contempt of the Supreme Court.
D. Duty of Participants. All participants in a proceeding under these rules shall conduct themselves so as to maintain the confidentiality mandated by this rule.
¶35 Goldstein and Albers complain that pursuant to Rule 13, they were denied access to documents which had been filed with the Commission prior to the filing of the formal complaints against them, and that they were excluded from Commission deliberations on their cases. Albers also complains that he was not allowed to depose the chairman or members of the Commission on Practice, the investigator of the informal complaint against him, or the special prosecutor of the formal complaint against him.
¶36 Goldstein and Albers argue that Rule 13 violates their rights to free speech under Article II, Section 7 of the Montana Constitution because the Rule places a “blanket gag order on all freedom of expres *503 sion relating to ethical charges against an attorney.” In so arguing, Goldstein cites Doe v. Supreme Court of Florida (S.D. Fla. 1990), 734 F.Supp. 981.
¶37 The plaintiff in Doe had filed a complaint with the Florida Bar against his former attorney. The Florida Bar determined that the complaint was meritorious and that the attorney in question had indeed violated the Code of Professional Responsibility. A private reprimand was issued against the lawyer. The plaintiff subsequently wished to speak and publish articles about his complaint. He dared not do so, however, out of fear of being punished for violation of a disciplinary rule which provided for confidentiality of disciplinary proceedings. He filed suit asking that the rule be declared unconstitutional. The United States District Court for the Southern District of Florida entered summary judgment for the plaintiff, declaring that the disciplinary rule was unconstitutional on its face and as applied. Doe, 734 F.Supp. at 988.
¶38 Doe is clearly distinguishable from the cases before us. First, and contrary to Goldstein’s assertions, Montana’s Rule 13 is not “identical” to the confidentiality provision at issue in Doe. Under Rule 13, after the Commission determines that a complaint is meritorious and directs the filing of a formal complaint, the proceedings are public. Such was apparently not the case after the Florida Bar determined that plaintiff Doe’s complaint was meritorious. Second, the facts and circumstances listed above which Goldstein and Albers cite in support of their argument that they were deprived of their rights to free speech under the confidentiality rule are totally different from the facts and circumstances which served as the basis for the court’s “unconstitutional as applied” decision in Doe. After considering Goldstein’s and Albers’ free speech claims, we hold that they have not established that their rights to free speech were violated.
¶39 We next consider the contention that Goldstein and Albers were denied their right to due process of law through application of Rule 13. Again, this claim relates to Goldstein’s and Albers’ alleged inability to prepare for their cases before the Commission as a result of being prohibited from reviewing documents in the Commission’s files which were filed prior to the filing of the formal complaints against them.
¶40 Due process requires notice and an opportunity to be heard. Goldberg v. Kelly (1970), 397 U.S. 254, 25 L.Ed.2d 287, 90 S.Ct. 1011. Our review of the Court’s files in the Goldstein and Albers matters establishes that the formal complaints filed against Goldstein and *504 Albers were detailed, thorough, and public. Goldstein and Albers cannot deny that well before their public hearings before the Commission they were fully informed in detail of each charge against them and the legal basis for each.
¶41 Discovery in the Albers case included special counsel’s disclosure of the names of persons with relevant knowledge, and the names of the witnesses the special counsel intended to call. In fact, prior to his public hearing before the Commission, Albers deposed all three principal witnesses who testified against him. In Goldstein’s case, special counsel provided to Goldstein’s counsel the names and addresses of all witnesses special counsel intended to call at the hearing; a list of all exhibits special counsel intended to offer, and an opportunity for Goldstein to copy all such exhibits. Neither Goldstein nor Albers claims that he was surprised by any of the evidence presented against him at the formal hearing before the Commission or that he consequently did not have a chance to meet that evidence. ¶42 Goldstein and Albers argue, however, that they were deprived of due process in that they were not allowed to examine documents filed with the Commission prior to the filing of the formal complaints. In considering this aspect, we first note that any evidence relating to portions of an informal-complaint not included in the formal charges filed against an attorney is not relevant, much less important, to the respondent attorney’s preparation to meet the charges at the formal hearing. Because the informal stage of the proceedings is not part of the record normally considered by the Court, any evidence which comes to light during the informal investigation but does not relate to matters included in the formal complaint does not enter into the ultimate outcome. The formal complaint controls the issues to be decided at the hearing before the Commission and the ultimate outcome of the disciplinary proceedings before this Court.
¶43 More troubling is the concern that evidence which may be exculpatory to the respondent attorneys as to issues which were included in the formal complaints may exist in the Commission’s pre-formal-complaint files. We agree that any exculpatory evidence which was filed before the formal complaint and which relates to matters eventually included in the formal complaint must be disclosed to the respondent attorney.
¶44 The Court has obtained from the Commission and examined the Commission’s files and records in the Goldstein and Albers cases prior to the dates of filing of the formal complaints. We have found no *505 such exculpatory evidence. We conclude that neither Goldstein nor Albers has demonstrated violation of his right to due process by virtue of Rule 13.
¶45 Albers argues that Rule 13 denies him his right to equal protection under the law, making a comparison with the constitutional provision and statutes concerning the Judicial Standards Commission under which a judge responding to a disciplinary complaint may waive confidentiality. See Art. VII, § 11(4), Mont. Const., and § 3-1-1122, MCA. Beyond a bare accusation of denial of equal protection, Albers’ argument is inscrutable, and we will not consider it further. Albers has not established that he was treated differently under the Rules on Lawyer Disciplinary Enforcement from any other attorney facing disciplinary charges.
¶46 In his objections to the Commission’s findings, conclusion, and recommendation, Albers also asserts that Rule 13 violates his right to full legal redress. He makes this argument only in general and cursory form, and he did not address the issue at oral argument. We find no merit in this argument.
¶47 In his briefs, Albers further asserts that the Rule 13 provision on confidentiality of Commission proceedings violates his right to know under Article II, Section 9, of Montana’s Constitution in that deliberations and all records of public bodies must be open. Albers asserts that confidential Commission proceedings also violate his right to participate in government decisions under Article II, Section 8. In addition, Albers argues that Article VII, Section 2(3) of the Montana Constitution does not specifically allow any proceedings of the Commission on Practice to be confidential.
¶48 According to these arguments an amount of consideration commensurate with their skeletal presentation by Albers, we reject them. First, Albers has failed to establish that the deliberations of the Commission, as an arm of this Court, and unlike the deliberations of this Court or of juries, are subject to the open meeting requirements set forth in Montana’s Constitution. See Order In re Selection of a Fifth Member to the Montana Districting Apportionment Commission, August 3, 1999.
¶49 It is also plain that because the Commission sits only in an advisory capacity to the Court, no prejudice has been shown, or can be shown, to Goldstein and Albers as a result of their exclusion from the Commission’s deliberation meetings. Goldstein, Albers, and some amici have suggested that the Commission might some *506 how be swayed by confidential information outside the record. We again point out that this Court reviews the record in an attorney discipline matter de novo to determine whether the charges have been proven by clear and convincing evidence. Goldstein, Albers, and their supporting amici have offered no speculation about how confidential information provided to the Commission prior to the filing of a formal complaint could sway the opinion of this Court, whose review is limited to the record of the formal proceedings against the attorney. In short, there has been a complete failure to show how any confidential information outside the record, with the exception of exculpatory evidence filed with the Commission prior to the filing of the formal complaints, could have any actual prejudicial effect on the results.
¶50 Goldstein and Albers were granted full discovery of all evidence to be presented at the formal hearings against them. Moreover, the final decision maker, this Court, ordinarily has no access to any material not found in the record filed with the Clerk of this Court. Our review leads us to conclude that Goldstein and Albers have not established that Rule 13 confidentiality prior to the filing of a formal complaint, the confidentiality of Commission deliberations after the filing of the formal complaint, or the denial of some of Albers’ discovery requests interfered with their due process or other constitutional rights.
Conclusion
¶51 We hold that Goldstein and Albers have not established violation of their constitutional rights by application of either Rule 9 or Rule 13 of the Rules on Lawyer Disciplinary Enforcement. We take under further advisement the remaining issues raised in these matters as to the discipline to be imposed, if any, against Morton B. Goldstein and Scott A. Albers.
JUSTICE HUNT, REGNIER and GRAY concur.