No. 02-146

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 7

IN THE MATTER OF
WARREN C. WENZ,
an Attorney at Law,

Respondent.

)
)
)
)
)
)

O P I N I O N
&
O R D E R

¶1 On April 22, 2003, the Montana Supreme Court Commission on Practice (the Commission) filed its Findings of Fact, Conclusions of Law and Recommendation regarding the Complaint filed against Respondent Warren C. Wenz (Wenz). The Commission concluded that Wenz violated Rule 1.10 of the Montana Rules of Professional Conduct (M.R.P.C.), when he and his firm undertook dual representation of two clients who were directly adverse and Wenz failed to make appropriate inquiries about the clients' consent to the dual representation. The Commission unanimously recommended that Wenz be publicly censured for his violation of Rule 1.10 and that he be required to pay his pro rata share (one-fifth) of the costs incurred by the Commission associated with the prosecution of this matter and Cause Nos. 02-143, 02-144, 02-145 and 02-147.

¶2 The conflict arose when Wenz's firm agreed to represent Colleen Schuff (Schuff) in a wrongful death action after her husband was fatally injured in an explosion at a gas station in Great Falls. A few months after the firm began representing Schuff, they determined that one of the firm's other clients, A.T. Klemens and Son (Klemens) was a potentially responsible party. The firm filed a complaint against Klemens on behalf of Schuff while

continuing to represent Klemens on other matters. *See Schuff v. A.T. Klemens & Son*, 2000 MT 357, 303 Mont. 274, 16 P.3d 1002.

¶3    On April 25, 2003, we entered an Order in this cause granting Wenz the opportunity to file objections to the Commission's Common Findings of Fact and Conclusions of Law in the aforementioned causes and to the individual Findings of Fact, Conclusions of Law and Recommendation in this cause. Wenz filed said objections and a brief in support of his objections on June 9, 2003, wherein he raised the following legal arguments: 1) Rule 1.10 places an unreasonable and impractical burden upon partners and associates; 2) there is no evidence that Wenz knowingly, intentionally, or recklessly violated Rule 1.10; 3) the Commission violated its own rules when it refused to produce its entire file in this matter; 4) the Commission denied Wenz his right to substantive and procedural due process; 5) inordinate delay and laches mandate dismissal of these proceedings; and 6) several mitigating factors set forth in the 1991 ABA Standards for Imposing Lawyer Sanctions are present in this case and mandate reducing any sanctions to be imposed or withholding sanctions entirely.

¶4    The Commission filed its response on August 6, 2003, wherein it argued that its findings, conclusions and recommendations are supported by the evidence and reflect an accurate interpretation of Rule 1.10; that Wenz violated Rule 1.10 when he and his firm simultaneously represented Klemens and Schuff, without consent, when these clients were directly adverse and Wenz failed to make appropriate inquiries about consent; that Wenz and his firm improperly terminated Klemens as a client; that Wenz's frame of mind is irrelevant to a determination of whether he violated Rule 1.10; that the Commission observed and

2

obeyed Wenz's due process rights; that the delay in referring this matter to the Commission is not grounds for relieving Wenz from his ethical violations; and that the Commission's recommendations for discipline are entirely appropriate.

¶5 As the Commission noted in its Common Findings of Fact and Conclusions of Law, because the Commission is involved in determinations that relate to Wenz's professional privileges, violations of the M.R.P.C. must be proven by clear and convincing evidence. Rule 15(C), Montana Rules for Lawyer Disciplinary Enforcement (M.R.L.D.E.) (2001).

¶6 In the companion case of *In the Matter of Johnson*, 2004 MT 6, ___ Mont. ___, ___ P.3d ___ (Cause No. 02-144), we held that Charles R. Johnson (Johnson) violated Rule 1.7, M.R.P.C., when he simultaneously represented Klemens and Schuff, without consent, when these clients were directly adverse and that Johnson improperly terminated Klemens as a client. Rule 1.7, M.R.P.C., provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after consultation.
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

¶7 Rule 1.7 requires lawyers to foster and protect client loyalty. *Grievance Committee of Bar v. Rottner* (Conn. 1964), 203 A.2d 82, 84-85. "Loyalty is an essential element in the

3

lawyer's relationship to a client." Rule 1.7, Comment 1, Model Rules of Professional Conduct (2001). "The duty of loyalty is 'perhaps the most basic of counsel's duties.'" *State v. Jones* (1996), 278 Mont. 121, 125, 923 P.2d 560, 563 (quoting *Strickland v. Washington* (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674). One commentator expressed this duty thusly:

> The reasons for the basic rigor of Rule 1.7(a) are readily discernable. It is intuitively obvious that parties with conflicting interests who are concurrently represented by the same lawyer face significant risks that the lawyer will act disloyally to one client or the other, or that confidential information concerning one client will be "leaked" to the other . . . .
> . . . .
>
> When Rule 1.7(a) applies, it commands that a lawyer "not represent" the clients in question. This means that a lawyer must not accept a second client if the directly adverse conflict is known in advance, and must withdraw if the conflict is discovered after the concurrent representation has been undertaken.

Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 11.3 (3rd ed. 2003) (hereafter "*Hazard*").

¶8      In Wenz's case, the Commission determined that there was clear and convincing evidence that Wenz violated Rule 1.10, M.R.P.C., when Wenz failed to make appropriate inquiries about the consent obtained by Johnson from Gene Cantley, president of Klemens. Rule 1.10 provides, in relevant part:

> (a)   While lawyers are associated in a firm, none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
> . . . .
>
> (d)  A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

4

Rule 1.10(a) applies the duty of loyalty found in Rule 1.7 to all lawyers practicing within a law firm. Hence, each such lawyer is vicariously bound by the obligation of loyalty owed by all lawyers with whom that lawyer is associated. *See* Rule 1.10, Comment 6, Model Rules of Professional Conduct (2001).

¶9      Wenz argues in his brief on appeal that Rule 1.10 places an impractical and unreasonable burden on partners and associates. It is true that the requirements of Rule 1.10 are exacting, but there are good reasons for this stringent rule.

> Lawyers in a firm, or in a close association like a firm, in fact normally function more or less as a single unit. They consult each other, have access to each other's files, overhear conversations with clients, and have a mutual financial interest in their clients' cases. . . .
>        These rationales all trace back to the principal target of imputed disqualification--the risk that client confidences will be leaked to an opposing party or used against the original client. Rule 1.10(a) imposes imputed disqualification automatically, however, without requiring any showing of either actual leakage or even actual access to confidential information; these are conclusively presumed.

*Hazard*, § 14.4.

¶10     Moreover, the imputed disqualification imposed by Rule 1.10(a) is absolute:

> The first step is to decide whether a particular lawyer, considered alone, would be barred from taking on or continuing a matter. . . . If the individual lawyer is barred, the second step is *automatically* to extend or impute the same bar to all lawyers who are associated with that lawyer in the same "firm. . . ."

*Hazard*, § 14.4 (emphasis in original).

¶11     Wenz maintains that he reasonably relied on Johnson's report of his conversation with Cantley, thus he lacked actual knowledge that Cantley did not consent to the concurrent representation and that it would be unreasonable to infer such knowledge from these circumstances. However, Wenz violated Rule 1.10, not because he knew about Johnson's

violation of Rule 1.7, but because he knowingly represented Klemens and because he failed to make the appropriate inquiries regarding Klemens's consent to the simultaneous representation of Schuff. Furthermore, having been informed of the substance of the conversation between Cantley and Johnson regarding the conflict, Wenz was not reasonable in his belief that the firm's simultaneous representation of Klemens and Schuff would not adversely affect the relationship with Klemens. We determined in *Johnson* that it was untenable for an attorney to contend that no conflict of interest existed where the attorney asserted on behalf of one client via pleadings filed in court that another client negligently caused the death of the first client's spouse. *Johnson*, ¶ 8.

¶12    Nor was it reasonable for Wenz to believe that Johnson had obtained Cantley's informed consent for the firm's continued representation of Schuff. Wenz's expert witness Professor Robert Aronson described the concept of informed consent this way:

> [A]ttorneys who undertake to represent parties with divergent interests owe the highest duty to each to make full disclosure of all facts and circumstances necessary to enable the parties to make an informed decision. This "full disclosure" should include areas of potential conflict, the desirability of seeking independent legal advice, the fact that information from either of the parties will not be confidential with respect to the other party, and the course of action the attorney will take if an actual conflict arises. "Consultation" or "full disclosure" implies communicating "all of the facts and implications" of an attorney's representation of multiple clients and any circumstances which might cause a client to question the undivided loyalty of the lawyer.

Robert H. Aronson & Donald T. Weckstein, *Professional Responsibility in a Nutshell* 226 (2d ed. 1991).

¶13    Because Wenz is a seasoned attorney with many years of experience, he should have recognized that Rule 1.7's (and by imputation, Rule 1.10's) requirement of consent "after

6

consultation" required, at a minimum, that Johnson should have explained Rule 1.7 to Cantley; discussed the ramifications of the firm's representation of Schuff; and informed Cantley that he had the right to withhold consent. However, Johnson did none of these things, thus it should have been clear to Wenz that Johnson did not sufficiently inform Cantley of the firm's obligations under Rule 1.7.

¶14 Wenz maintains that Cantley is a shrewd and capable businessman who is experienced with legal matters and that Cantley did consent by continuing to send Klemens's legal business to the firm. However, as the Commission points out in its brief on appeal, Klemens's efforts to remain connected to the firm do not demonstrate consent to the firm's representation of Schuff, rather it illustrates the very thing that Rule 1.7 exists to protect--a client's trust in his or her own lawyer. Moreover, Cantley's knowledge of the legal system is irrelevant to Johnson's violation of Rule 1.7 and, hence, Wenz's violation of Rule 1.10. The obligations of a lawyer as set forth in the M.R.P.C. must be followed regardless of a client's level of legal sophistication. Furthermore, the evidence confirms that the amended complaint was not served upon Klemens for ten months after Johnson's conversation with Cantley about the firm's representation of Schuff, thus it is not surprising that Klemens continued using the firm.

¶15 In his defense, Wenz contends that he reasonably relied upon the District Court's ruling denying Klemens's motion to disqualify the firm in believing that he had complied with the M.R.P.C. However, we have ruled that a district court is not the place for deciding alleged violations of the M.R.P.C. *Schuff*, ¶¶ 33-37; Art. VII, § 2(3) of the Montana Constitution. The Commission correctly determined that the issue of whether Wenz violated

7

Rule 1.10 was never within the scope of the District Court's inquiry and that court's decision not to disqualify the firm did not relieve Wenz from his ethical violations.

¶16 Wenz maintains that he did not intentionally or recklessly violate Rule 1.10 because he reasonably relied on Johnson's report of his conversation with Cantley and that he lacked actual knowledge that Cantley did not consent to the concurrent representation. Nothing in the M.R.P.C. implies that a lawyer has to knowingly violate the M.R.P.C. in order to be subject to discipline. Wenz knowingly represented Klemens when his firm was prohibited from doing so by Rule 1.7. An attorney cannot be relieved from liability for ethical violations just because the attorney did not mean to commit them. As the Commission points out in its brief on appeal, the public's confidence in the integrity of the Bar lies in the enforceability of the rules designed to protect the public from unprofessional behavior. If lawyers could avoid discipline for ethical lapses simply by claiming they did not intend to violate the M.R.P.C., then the M.R.P.C. would be impossible to enforce.

¶17 Wenz also contends that his right to due process was violated by various actions of the Commission including: considering a letter submitted by counsel appointed by Klemens's insurer that castigated members of Wenz's firm; allowing Special Counsel to amend his report to recommend formal complaints against Wenz and the others; allowing Commissioner Mary Jo Ridgeway to participate in the hearings when her husband is District Judge Gary Day who wrote a dissenting opinion in the *Schuff* decision that was harshly critical of the members of Wenz's firm; and depriving Wenz and the others of the benefit of the entire Commission file on these matters.

8

¶18    The Commission's work on this matter is entitled to a presumption of honesty and fairness. *See Goldstein v. Commission on Practice*, 2000 MT 8, ¶ 27, 297 Mont. 493, ¶ 27, 995 P.2d 923, ¶ 27, *cert. denied sub nom Albers v. Supreme Court*, 531 U.S. 918, 121 S.Ct. 276, 148 L.Ed.2d 201 (2000). To overcome that presumption, Wenz must show specific facts and circumstances that make the risk of unfairness to him intolerably high or that show he has been denied his due process rights. *Goldstein*, ¶ 27. Wenz's allegations, however, are insufficient to meet his burden. First, counsel's letter castigating the members of Wenz's firm was not offered as evidence during the disciplinary proceedings and the Commission did not use counsel's letter as the basis for any of its findings or conclusions. Second, Special Counsel's recommendations regarding discipline were amended at the request of Special Counsel, not the Commission. Third, Commissioner Ridgeway recused herself from participating in this action and she was not present at the hearing. Fourth, Rule 13, M.R.L.D.E. (2001), requires that all Commission deliberations remain confidential.

¶19    Wenz also argues that the proceedings against him should be dismissed because the Commission violated its own procedural requirements in Rule 8A, M.R.L.D.E. He maintains that while the Commission directed letters to other attorneys in the firm notifying them that this Court had directed the Commission to conduct an inquiry into their ethical conduct in the Schuff case, Wenz received no such letter. Wenz maintains that although he spoke with Special Counsel once, he was not informed that he was the subject of any disciplinary investigation. Wenz contends that his first notice that he was the subject of a disciplinary inquiry was when he was presented with the formal complaint against him on October 22, 2001.

9

¶20 Rule 8A specifies that unless the Commission directs otherwise, "the lawyer involved . . . shall be notified that the matter has been referred for investigation." This Court stated in *Schuff*:

> Pursuant to this Court's singular jurisdiction under Article VII, Section 2(3), of the Montana Constitution over matters pertaining to lawyer discipline and claimed violations of the [M.R.P.C.], we conclude that the conduct of *Schuff's counsel* and of *Klemens' trial and appellate counsel* as regards those claimed violations, must be referred to the Commission on Practice. If the Commission's further investigation reveals violations of the [M.R.P.C.] as regards counsels' conduct in this case, then the Commission may pursue appropriate prosecutions and recommendations for discipline as the facts and law may, in the Commission's discretion, warrant.

*Schuff*, ¶ 57 (emphasis added). Clearly, Wenz and the other members of his firm were on notice as early as December 27, 2000, when the *Schuff* decision was handed down, that an investigation by the Commission was underway. Because Wenz represented Klemens on various matters in 1992 and 1993, it was unreasonable for Wenz to assume that he would not be one of the subjects of the Commission's investigation. Moreover, Wenz was interviewed by Special Counsel regarding his representation of Klemens.

¶21 Wenz further contends that inordinate delay and laches mandate dismissal of these proceedings because more than ten years have passed since this conflict arose. The defense of laches cannot apply without a showing of lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. *Coalition for Canyon Preservation v. Bowers* (9th Cir. 1980), 632 F.2d 774, 779 (citation omitted). Here, the Commission and Special Counsel have at all times acted diligently in investigating and prosecuting this matter. We referred this matter to the Commission on December 27, 2000. Special Counsel commenced an investigation in January 2001. The Commission voted to

file formal charges against Wenz and several other members of his firm in June 2001. Wenz and the others received copies of the complaints in October 2001. The complaints were filed in March 2002 and an evidentiary hearing was conducted in November 2002.

¶22 Furthermore, Wenz suffered no prejudice by the delay in this matter. His testimony at the November 2002 hearing reflects clear memories about the facts that form the basis for the allegations against him. Moreover, most of the evidence of Wenz's ethical violations comes from the firm's records including correspondence and billing records. In addition, the transcript of the 1993 disqualification hearing recounts the facts surrounding the firm's conflict between Klemens and Schuff. Therefore, the defense of laches is inapplicable here.

¶23 As his final argument, Wenz maintains that several mitigating factors set forth in the 1991 ABA Standards for Imposing Lawyer Sanctions are present in this case and that those factors mandate reducing any sanctions to be imposed or withholding sanctions entirely. These mitigating factors include the absence of any selfish or dishonest motive on Wenz's part; the fact that both clients actively sought representation by the firm; the fact that while Wenz represented Klemens throughout the relevant period, he was not directly involved in prosecution of the Schuff matter; Wenz's reputation for good character and high competence as an attorney; the fact that Wenz practiced law in Montana for more than thirty-five years without any prior disciplinary record before the Commission; and the delay in bringing and processing disciplinary proceedings in this matter.

¶24 Both the Commission and this Court have taken these mitigating factors into consideration. Nevertheless, we agree with the Commission's recommendation and hold that public censure is appropriate in this case for the following reasons: 1) it will inform Wenz

11

of the gravity of his transgressions; 2) it will deter similar unethical conduct by other Montana attorneys; 3) it will serve notice to all Montana lawyers that the M.R.P.C. are to be taken seriously and consulted in order to avoid situations that would erode public confidence in the Bar. Therefore,

¶25 IT IS HEREBY ORDERED that the Commission's Common Findings of Fact and Conclusions of Law insofar as they pertain to Wenz and the Commission's individual Findings of Fact, Conclusions of Law and Recommendation as to Wenz, are adopted in full.

¶26 IT IS FURTHER ORDERED that Wenz appear before this Court in Helena, Montana, on the 24th day of February, 2004, at 10:00 a.m., for the administration of a public censure.

¶27 IT IS FURTHER ORDERED that Wenz shall pay his pro rata share (one-fifth) of the costs incurred by the Commission associated with the prosecution of this matter and the other cases referred to above, in accordance with the attached statement of the Secretary of the Commission on Practice. Wenz shall have ten days from the date of service of this Order in which to file with the Commission any objections to the costs assessed against him. Should he so desire, Wenz may also request a hearing before the Commission on the question of the reasonableness and necessity of said costs. Following the filing of any such objections and a hearing before the Commission, the Commission shall file with this Court its recommendations as to said costs along with any objections thereto filed by Wenz, after which this Court will enter a final Order regarding the costs of these proceedings.

¶28 IT IS FURTHER ORDERED that the Clerk of this Court shall serve a copy of this Order upon Wenz; William Conklin, Wenz's counsel; John Warren, Chairperson of the Commission; Sharon Parrish, Secretary of the Commission; Benjamin R. Graybill, Special

12

Counsel for the Commission; the Clerks of the District Courts of the State of Montana for service upon the District Judges of the State of Montana; the Clerk of the Federal District Court of the District of Montana; the Clerk of the Circuit Court of Appeals of the Ninth Circuit; and the Executive Director of the State Bar of Montana.

DATED this 26th day of January, 2004.

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE

/S/ MIKE SALVAGNI
District Judge Mike Salvagni sitting for
Justice Jim Regnier

/S/ TED L. MIZNER
District Judge Ted L. Mizner sitting for
Justice Patricia O. Cotter

Justice John Warner concurring and dissenting.

¶29    I concur in the decision of this Court that Respondent, Warren C. Wenz, violated Rule 1.10 of the M.R.P.C., when he failed to make appropriate inquiries concerning dual representation of two clients who were directly adverse to each other. As stated by the Court, Wenz was not reasonable in his belief that the firm's representation of Klemens and Schuff would not adversely affect the relationship with Klemens.

¶30    I respectfully dissent from the decision that a public censure, as recommended by the Commission on Practice, is the appropriate sanction.

¶31    Rule 9, Rules for Lawyer Disciplinary Enforcement, sets out the forms of discipline for violations of the M.R.P.C., and the criteria for application as follows:

**RULE 9. DISCIPLINE AND SANCTIONS**

**A. Forms of Discipline.** Discipline may take one or more of the following forms:

(1) Disbarment.

(2) Suspension from the practice of law for a definite period of time or for an indefinite period of time with a fixed minimum term.

(3) Public censure.

(4) Private admonition.

(5) Probation.

. . . .

(8) Assessment of the cost of proceedings . . . .

**B. Discipline Criteria.** The following factors shall be considered in determining discipline to be recommended or imposed:

(1) The duty violated;

(2) The lawyer's mental state;

14

(3) The actual or potential injury caused by the lawyer's misconduct;  and

(4) The existence of aggravating or mitigating factors.

¶32    In my view, upon a consideration of the entire record of this case, and after consideration of the applicable criteria set forth in Rule 9B, the more appropriate censure is a private admonition before the Commission, and payment of the cost of the proceedings.

¶33    The duty violated by Wenz was the failure to make sure that his partners were acting appropriately.  Such duty is clearly imposed, and for good reason.  A partner in a law firm, a principal in a professional corporation, or an associate, cannot avoid discipline by ignoring what his partners are doing.  Had he asserted himself, Wenz may have been able to convince his partners to act correctly.  However, it must be acknowledged that his dereliction was one of omission.  He did not intend to violate the rules, or to cause harm.  His mental state was one of complacency, not of intent to engage in prohibited conduct.

¶34    The majority of the Court is correct in stating that an attorney cannot be relieved from liability, or avoid discipline, simply by claiming he did not intend to violate the rules of conduct.  However, the disciplinary rules specifically provide that the mental state of the offender is to be taken into account in imposing sanctions.  Wenz's omission was with no scienter.

¶35    The District Court, the Commission on Practice, and this Court have all found that there was no harm caused to either client by Wenz's omission.

¶36    Wenz was admitted to the bar in 1968.  There is no record of any previous violations of the M.R.P.C., this violation occurred in 1992, and there have been no violations since. No harm was done to any client, or to anyone else.  Most importantly, there is no indication whatever that further transgressions are likely and, in fact, all indications are to the contrary.

15

There is no need to protect the citizenry from Wenz and by all accounts he still has much good to offer the bar and the citizens of Montana.

¶37 Reported cases over the last 33 years do not reveal an instance where a public censure was administered to a lawyer who practiced for 36 years, who was guilty of a single infraction of the rules which resulted in no harm. *In re Graveley* (1990), 246 Mont. 58, 805 P.2d 1263; *In re Wyse* (1984), 212 Mont. 339, 688 P.2d 758; *In re Johnson* (1979), 182 Mont. 486, 597 P.2d 740; *In re Porter* (1970), 156 Mont. 190, 478 P.2d 866.

¶38 Wenz's failure cannot be condoned. Nor can this matter just go away. However, a fair consideration of the circumstances mandates imposition of the lesser sanction of a private admonition and payment of the costs of this proceeding.

DATED this 26TH day of January 2004.


/S/ JOHN WARNER


I join in the foregoing concurrence and dissent of Justice Warner.


/S/ BLAIR JONES
District Judge Blair Jones sitting for
Justice W. William Leaphart