Stefania SANTACROCE, Plaintiff,

v.

Richard B. NEFF, Lee Hillman and Michael Goldberg, as the Executors of the Estate of Arthur M. Goldberg, deceased, and Dice Investments, LLC, Defendants.

No. CIV.A. 01–0048(JCL).

United States District Court,
D. New Jersey.

March 7, 2001.

would discredit the claim that their actions    were purely retaliatory.

Michael M. Rosenbaum, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, for Plaintiff.

Gregory Galterio, Jaffe & Asher, LLP, Hawthorne, NJ, for Defendants.

## OPINION

LIFLAND, District Judge

The "Hot Potato Doctrine" has evolved to prevent attorneys from dropping one client like a "hot potato" to avoid a conflict with another, more remunerative client.

See *International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Assoc.*, 909 F.Supp. 287, 293 (E.D.Pa.). Upon review of the undisputed facts and the inferences drawn therefrom, the Court concludes that this is exactly what happened to plaintiff Stefania Santacroce ("Santacroce"). Accordingly, RPC 1.7(a) and 1.9(a)(1) of the New Jersey Rules of Professional Conduct preclude the firm of Jaffe & Asher from representing Arthur Goldberg's Estate in this case.[1]

### BACKGROUND

Arthur Goldberg ("Goldberg") was a longstanding client of Jaffe & Asher. (Asher Aff. ¶ 15) The firm represented Goldberg in personal matters and represented many of Goldberg's corporations, including DiGiorgio Corporation, Bally Total Fitness Corporation, and Dice Investments. (Asher Aff. ¶ 15)

In 1998, Goldberg and Santacroce became romantically involved. (Complaint ¶¶ 10–12) According to Santacroce, Goldberg requested that she leave her apartment in New York City, abandon her business, EuroJewels, Inc. ("EuroJewels"), and live with Goldberg in New Jersey to medically care for him and provide companionship. (Complaint ¶¶ 13–14)

At Goldberg's request, Jaffe & Asher was retained in November, 1999 to represent Santacroce and EuroJewels in connection with a contractual dispute with Damiani International ("Damiani"), a manufacturer of jewelry products. (Santacroce Dec. ¶ 2–3) Santacroce's legal fees in the Damiani matter were paid by Goldberg until his death. (Asher Aff. ¶ 2) On Santacroce's behalf, Jaffe & Asher filed a complaint in the New York Supreme Court, New York County, against Damiani, re-

---

**1.** RPC 1.7(a) precludes Jaffe & Asher from representing all defendants, including the Estate, the Executors and Dice Investments, LLC ("Dice"). Applying RPC 1.9(a)(1) to each individual defendant produces the same result. *See Infra* page 371.

garding the termination of an exclusive agency agreement ("Damiani matter"). (Asher Aff., ¶ 17) Santacroce filed an affidavit with the New York Supreme Court in the Damiani matter on November 5, 1999. (Asher Aff., Exhibit A, Santacroce Affidavit) As Santacroce's counsel, Jaffe & Asher prepared her affidavit which states that Damiani terminated the agency agreement with EuroJewels without good cause or reasonable notice and Damiani misappropriated confidential customer information from EuroJewels. (Asher Aff., Exhibit A ¶¶ 2,3) Santacroce's affidavit generally claims that EuroJewels did nothing to provoke Damiani's "commercially unreasonable termination" of the agency agreement. (Asher Aff., Exhibit A ¶¶ 2,3)

Although the New York action was dismissed due to improper venue, Jaffe & Asher continued to provide Santacroce with legal services and helped her obtain local counsel in the proper venue. (Asher Aff., ¶ 17) Moreover, Jaffe & Asher "also assisted EuroJewels in connection with minor business disputes with its landlord and freight forwarder." (Asher Aff., ¶ 17)

On October 19, 2000, Goldberg died. (Complaint ¶ 26) Richard Neff, one of the Goldberg Estate's Executors, approached Asher and stated that the Estate wanted Jaffe & Asher to represent its interests in any forthcoming litigation. *See* Transcript of February 16, 2001 Hearing at 55:4–10.

Goldberg's Last Will and Testament did not leave anything to Santacroce. (Complaint ¶ 27) In December, 2000, Santacroce retained Michael Rosenbaum ("Rosenbaum") as counsel with the intent to file a palimony suit against the Goldberg Estate ("Estate"). Frank Stifelman ("Stifelman") was then counsel to the Estate. In December, 2000,[2] Rosenbaum gave a "courtesy copy" draft of Santacroce's complaint to Stifelman. (Rosenbaum Dec. ¶ 3) Rosenbaum agreed not to file the complaint while settlement negotiations were pending. (Rosenbaum Dec. ¶ 3)

On December 22, 2000, Jaffe & Asher sent Santacroce a letter withdrawing as counsel in the Damiani matter. The letter stated that "[i]n light of the fact that you have commenced an action against the estate of Arthur Goldberg, a conflict of interest has arisen in our representation of you. Regrettably, we must therefore withdraw as your attorneys effective immediately.... At this time, we ask that you pay in full your current outstanding legal bills for legal fees and disbursements in the amount of $8,828.20." (Santacroce Dec., Exhibit A)

On January 4, 2001, Santacroce filed the complaint in this Court, alleging breach of promise for support and breach of promise to make a will. She seeks a declaratory judgment and specific performance and asserts promissory estoppel against defendants, the Executors of the Estate.[3] Santacroce alleges that Goldberg persuaded her to move to New Jersey and abandon EuroJewels in exchange for Goldberg's promise of financial security for the rest of her life. (Complaint ¶¶ 15,16)

Jaffe & Asher seek to represent the Estate in this matter.[4] On February 7,

---

2. At the February 16, 2001 hearing, Mr. Rosenbaum modified his affidavit and represented that he believed he gave Stifelman a copy of the complaint on either December 21 or 22, 2000. *See* Transcript of February 16, 2001 Hearing at 21:19–22:2.

3. The defendants in this matter include Richard Neff, Lee Hillman, and Michael Goldberg as Executors of Goldberg's Estate. Richard Neff is also an executive officer of DiGiorgio Corporation and Lee Hillman is an executive officer of Bally Total Fitness Corporation. Both corporations were owned by Goldberg.

4. On January 3, 2001, Stifelman called Rosenbaum to inform him that Stifelman was being replaced by Jaffe & Asher as counsel to

2001, Santacroce sought, and the Court signed, an Order to Show Cause why Jaffe & Asher should not be disqualified. Santacroce argues that Jaffe & Asher must be disqualified based on RPC 1.7(a), 1.9(a)(1) and the New Jersey appearance of impropriety doctrine. The Court conducted a hearing on Friday, February 16, 2001 and reserved decision. The Court was then uncertain as to whether an evidentiary hearing was necessary, but the undisputed facts and inferences therefrom compel the disqualification of Jaffe & Asher in this case.

### DISCUSSION

■ This Court has a "duty to root out, condemn and 'initiate appropriate disciplinary measures against a . . . lawyer for unprofessional conduct of which [it has] become aware.'" *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 1994 WL 62124, at *2 (D.N.J.1994). (quoting Code of Judicial Conduct Canon 3.B.(3)); *see also Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir.1984) (stating that "[o]ne of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it").

"The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to the modifications as may be required or permitted by Federal Statute, regulations, court rule or decision of law." United States District Court for the District of New Jersey, Local Rule 103.1(a). *See Greig v. Macy's Northeast*, 1 F.Supp.2d 397, 399–400 (D.N.J.1998) (holding that the New Jersey RPCs apply to

the Estate. (Rosenbaum Dec. ¶ 5) On the same day, Asher called Rosenbaum to request that Santacroce waive any conflict. (Rosen-

questions of disqualification of counsel in the district courts); *Alexander v. Primerica Holdings Inc.*, 822 F.Supp. 1099, 1113–14 (D.N.J.1993) (apply New Jersey state rules to deny disqualification of counsel).

### I. RPC 1.7

RPC 1.7(a) governs a potential conflict of interest when an attorney concurrently represents clients with adverse interests. RPC 1.7(a) provides:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) each client consents after a full disclosure of the circumstances and consultation with the client.

RPC 1.7(a)(1)-(2).

Under RPC 1.7(a), an attorney may not concurrently represent two clients when 1) the clients' interests are materially adverse, 2) the relationship of one of the clients with the attorney will be adversely affected and 3) either client does not consent to the dual representation. In this case, there is no question that the interests of the Estate and Santacroce are directly adverse because they are opposing parties in the present suit. Accordingly, if Jaffe & Asher represented the Estate in this case, the firm's relationship with Santacroce would be adversely affected. Furthermore, RPC 1.7(a)(2) is not satisfied because Santacroce never consented to Jaffe & Asher's representation of the Estate.

baum Dec. ¶ 6) Santacroce did not provide a waiver.

Jaffe & Asher argue that RPC 1.7(a) does not apply in this situation because Santacroce was a former client when the present complaint was filed. It points to the December 22, 2000 firing of Santacroce as a client and the January 4, 2001 filing of the complaint. The Court looks to RPC 1.7 when the movant is an actual, not a former, client during the events pertinent to this motion. *See Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 1994 WL 62124 (D.N.J.1994). Although a party may have become a former client soon after the complaint against him was filed, "[t]he relevant date for determining status as a present or former client is the date on which the complaint was filed." *Id.* at *3 (quoting *Manoir–Electroalloys v. Amalloy Corp.*, 711 F.Supp. 188, 192 n. 6 (D.N.J.1989)). Here, Jaffe & Asher argue that Santacroce became a former client before the complaint was filed, and that therefore, RPC 1.7 does not apply. The Court disagrees. The complaint's actual filing date is not particularly significant when notice of the proposed complaint is what precipitated the events pertinent to this motion.

Here, Santacroce was fired as a client by Jaffe & Asher because it got wind of her proposed complaint against the Estate. This conclusion is compelled by the timing of the December 21 or 22 sharing of the complaint by Rosenbaum with Stifelman, the then-attorney for the Estate, coupled with the December 22 letter, which referred to her commencing an action against the Estate, asserted a conflict and fired her as a client. Thus, the appropriate date for evaluating the applicability of RPC 1.7(a) is not the filing date of the complaint, by which time Santacroce was a former client of Jaffe & Asher. Under the circumstances here, the appropriate date is after Jaffe & Asher found out about the proposed complaint but before the firm fired Sanatacroce. During that interval, Jaffe & Asher represented both Santacroce and the Estate. At that time, there was a clear conflict (as Jaffe & Asher asserted in the December 22 letter) and RPC 1.7(a) applies and precludes Jaffe & Asher's representation of defendants herein.

In any event, the "hot potato doctrine" serves as an exception to the general rule that the status of a client must be determined by the date of the filed complaint. *See International Longshoremen's Ass'n, Local Union 1332 v. International Longshoremen's Assoc.*, 909 F.Supp. 287, 293 (E.D.Pa.). An attorney may not drop one client like a "hot potato" in order to avoid a conflict with another, more remunerative client. *See id.; see also Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F.Supp. 789, 794 (S.D.N.Y.1991); *Harte Biltmore Ltd. v. First Pa. Bank*, 655 F.Supp. 419, 421 (S.D.Fla.1987); *Picker Int'l, Inc. v. Varian Assoc., Inc.*, 670 F.Supp. 1363, 1365–66 (N.D.Ohio 1987), *aff'd*, 869 F.2d 578 (Fed.Cir.1989). "Such behavior is unethical as it violates attorneys' duty of loyalty. Although the Third Circuit has never specifically adopted the 'hot potato' rule, it is clear that attorneys before this court have a strong duty of loyalty." *International Longshoremen's Ass'n*, at 293 (citing *Harte Biltmore Ltd.*, at 421).

In *International Longshoremen's Assoc.*, the United States District Court for the Eastern District of Pennsylvania disqualified counsel based on the "hot potato" rule. *See id.* at 290. A law firm represented a local union as a defendant in one action. Subsequently, the local union brought suit against the international union. *See id.* Counsel for the local union attempted to withdraw its representation of the local union so that the law firm could represent the international union in

the later case. *See id.* at 293. However, the court recognized that such conduct would constitute a violation of the Rules of Professional Conduct because the law firm was trying to "drop" the first client like a "hot potato" when a more lucrative opportunity arose. *See id.* The court found that "the conflicts of interest [were] simply too severe to allow the defense team to remain on the case, despite counsel's assurances that the conflicts will in no way interfere with their professional judgment." *Id.* at 293–94.

The United States District Court for the District of New Jersey has also applied the theory behind the "hot potato rule." *See Schiffli,* at *3, n. 2

> The court in *Manoir–Electroalloys* addressed the question of whether N.J. RPC 1.7 or 1.9 should apply in instances where a lawyer concurrently representing two clients simultaneously withdraws as counsel for one client and sues the reconstituted 'former' client on behalf of the other client. The court declined to apply N.J. RPC 1.9 stating that a firm may not circumvent Model Rule 1.7 by dropping a present client or characterizing him as a former client in order to take on a conflicting and, quite possibly, more lucrative client. Were it otherwise, both the duty of undivided loyalty to the client and public confidence in attorneys and the legal system would be undermined.

*Schiffli,* at *3, n. 2 (citing *Manoir–Electroalloys* at 195).

5. Asher claims that he was providing legal services for Santacroce as a favor for Goldberg who was his personal friend. (Asher Aff. ¶ 17) Asher further stated that "the court should be aware that, as a personal favor to the decedent, I zeroed out all bills for legal services at the end of each month and charged him only for out of pocket disbursements." (Asher Aff. ¶ 18) Jaffe & Asher maintained that Santacroce was offered the same

When Jaffe & Asher found out that the firm's two clients, Santacroce and the Estate, were at odds, it dropped Santacroce like a "hot potato." The firm dropped Santacroce even before suit was filed in a transparent attempt to represent the extraordinarily more remunerative client, the Estate of multimillionaire Goldberg. Although Jaffe & Asher claim that they terminated representation of Santacroce only due to her inability to pay legal fees, this is belied by their own words. The firm itself refers to the "conflict of interest" in their December 22, 2000 letter to Santacroce.[5]

The Court concludes that RPC 1.7(a) precludes Jaffe & Asher from representing the Estate in this matter.

Jaffe & Asher is also precluded from representing Dice under RPC 1.7(a) because the firm admits that it represented Dice for many years as part of the long-standing relationship the firm had with Goldberg. (Asher Aff. 15–16) Prior to gaining knowledge of Santacroce's complaint on or around December 22, 2000, Jaffe & Asher was simultaneously representing Santacroce and Dice. As discussed above, Jaffe & Asher violated RPC 1.7 by dropping Santacroce like a "hot potato" to represent the more lucrative client Dice.

## II.  RPC 1.9

Even if the Estate is a successor client to Santacroce, Jaffe & Asher must be disqualified under RPC 1.9 as well. RPC 1.9(a)(1), governing successive representation, provides:

> "deal" offered to Goldberg whereby she was only required to pay out of pocket disbursements. *See* Transcript of February 16, 2001 Hearing at 10:2–8. However, this representation to the Court is belied by the firm's December 22, 2000 letter to Santacroce, which indicates that Jaffe & Asher demanded complete reimbursement from Santacroce of "fees and disbursements."

(a) A lawyer who has represented a client in a matter shall not thereafter: (1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client . . .

Under RPC 1.9(a)(1), Jaffe & Asher cannot represent the Estate in this matter unless 1) the matters are not substantially related, or 2) Santacroce consents, or 3) the interests of Santacroce and the Estate are not materially adverse. As noted previously, the second and third prongs of RPC 1.9(a)(1) analysis have not been met in this case. The Court must decide whether the matters in which Jaffe & Asher represented Santacroce are substantially related to her suit against the Estate.

■ Jaffe & Asher argue that their firm's representation of Santacroce in the case against Damiani is not substantially related to the present matter because Santacroce did not reveal any information or confidences which would give the defendants an advantage. The Court disagrees.

In the Damiani matter, Asher prepared Santacroce's affidavit, which claims that Damiani terminated the agency agreement with EuroJewels without cause. Under Jaffe & Asher's guidance, Santacroce argued that EuroJewels never gave Damiani any reason to discontinue their business relationship.

This causes a problem in the instant case because the Estate is now faced with Santacroce's claim that Goldberg asked her to abandon EuroJewels to live with him in New Jersey and become his caretaker and social companion. (Complaint ¶¶ 13–17) Santacroce alleges that Goldberg knew his request would cause EuroJewels

to falter so he promised to provide Santacroce with financial security for the rest of her life. The Estate, though the work of Jaffe & Asher when it represented Santacroce and prepared her affidavit in the Damiani matter, is provided with a defense to Santacroce's claim herein. That affidavit, which implies that EuroJewels was operating efficiently, directly contradicts Santacroce's allegations that she abandoned EuroJewels in consideration for Goldberg's promises. Accordingly, Jaffe & Asher's representation of Santacroce and EuroJewels in the Damiani matter is substantially related to Santacroce's present complaint against the Estate.

The record indicates that Jaffe & Asher represented Dice for many years as part of the long-standing relationship the firm had with Goldberg. (Asher Aff. 15–16) Santacroce alleges that the apartment purchased in New York City was in consideration for her care and companionship for Goldberg.

In late 1999, and as part of the fulfillment of his financial promises, Arthur decided to purchase an apartment in New York City. Arthur asked Stefania to search for the apartment, an apartment in which they were to reside together and which he told her and others with whom he confided was to be their marital home. In December, 1999, Arthur purchased an apartment at 15 E. 69th Street, taking title through Dice. In consideration for her relinquishment of her career to be by his side and to provide the constant care he required, Arthur promised that the apartment was to be hers. Stefania furnished the apartment and made a home she and Arthur shared.

(Complaint, ¶ 22)

As a defendant in this matter, Dice will presumably challenge Santacroce's claim that she is entitled to the New York apart-

ment. Jaffe & Asher's representation of Santacroce in the Damiani matter is substantially related to the question of who is entitled to the apartment. Santacroce's present claim that she abandoned her business and her previous New York apartment in exchange for financial security (including the apartment) can be challenged by the Estate by the affidavit prepared by Jaffe & Asher in the Damiani matter.

In addition, at the February 16, 2001 hearing, Jaffe & Asher represented that "one hundred percent of the stock of Dice is owned by the Estate so upon Mr. Goldberg's death essentially we as the lawyers for Dice were also the lawyers for the Estate." *See* Transcript of February 16, 2001 Hearing at 42:11–14. Jaffe & Asher concede that Dice is essentially controlled by the Estate. Accordingly, Jaffe & Asher's representation of Dice constitutes a violation of RPC 1.9(a)(1) for the same reasons that Jaffe & Asher are disqualified from representing the Estate.

In conclusion, under both RPC 1.7(a) and RPC 1.9(a)(1), Jaffe & Asher cannot represent the Estate, its Executors or Dice in this matter.