No. 02-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 6

IN THE MATTER OF                                    )
CHARLES R. JOHNSON,                                 )        O P I N I O N
an Attorney at Law,                                 )              &
                                                    )        O R D E R
                        Respondent.                 )

¶1      On April 22, 2003, the Montana Supreme Court Commission on Practice (the
Commission) filed its Findings of Fact, Conclusions of Law and Recommendation regarding
the Complaint filed against Respondent Charles R. Johnson (Johnson).  The Commission
concluded that Johnson violated Rule 1.7 of the Montana Rules of Professional Conduct
(M.R.P.C.) when he undertook dual representation of two clients who were directly adverse.
The Commission unanimously recommended that Johnson be publicly censured for his
violation of Rule 1.7 and that he be required to pay his pro rata share (one-fifth) of the costs
incurred by the Commission associated with the prosecution of this matter and Cause Nos.
02-143, 02-145, 02-146 and 02-147.

¶2      The conflict arose when Johnson's firm agreed to represent Colleen Schuff (Schuff)
in a wrongful death action after her husband was fatally injured in an explosion at a gas
station in Great Falls.  A few months after the firm began representing Schuff, they
determined that one of the firm's other clients, A.T. Klemens and Son (Klemens) was a
potentially responsible party.  The firm filed a complaint against Klemens on behalf of
Schuff while continuing to represent Klemens on other matters.  *See Schuff v. A.T. Klemens
& Son*, 2000 MT 357, 303 Mont. 274, 16 P.3d 1002.

¶3      On April 25, 2003, we entered an Order in this cause granting Johnson the opportunity to file objections to the Commission's Common Findings of Fact and Conclusions of Law in the aforementioned causes and to the individual Findings of Fact, Conclusions of Law and Recommendation in this cause. Johnson filed said objections and a brief in support of his objections on June 9, 2003, wherein he raised the following legal arguments: 1) Rule 1.7 does not require "informed consent;" 2) there is no evidence that Johnson knowingly, intentionally, or recklessly violated Rule 1.7; 3) the Commission violated its own rules when it refused to produce its entire file in this matter; 4) the Commission denied Johnson his right to substantive and procedural due process; 5) inordinate delay and laches mandate dismissal of these proceedings; and 6) several mitigating factors set forth in the 1991 ABA Standards for Imposing Lawyer Sanctions are present in this case and mandate reducing any sanctions to be imposed or withholding sanctions entirely.

¶4      The Commission filed its response on August 6, 2003, wherein it argued that its findings, conclusions and recommendations are supported by the evidence and reflect an accurate interpretation of Rule 1.7; that Johnson violated Rule 1.7 when he simultaneously represented Klemens and Schuff, without consent, when these clients were directly adverse; that Johnson improperly terminated Klemens as a client; that Johnson's frame of mind is irrelevant to a determination of whether he violated Rule 1.7; that the Commission observed and obeyed Johnson's due process rights; that the delay in referring this matter to the Commission is not grounds for relieving Johnson from his ethical violations; and that the Commission's recommendations for discipline are entirely appropriate.

¶5 As the Commission noted in its Common Findings of Fact and Conclusions of Law, because the Commission is involved in determinations that relate to Johnson's professional privileges, violations of the M.R.P.C. must be proven by clear and convincing evidence. Rule 15(C), Montana Rules for Lawyer Disciplinary Enforcement (M.R.L.D.E.) (2001).

¶6 The Commission determined that there was clear and convincing evidence that Johnson violated Rule 1.7, M.R.P.C., which provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> > (2) each client consents after consultation.
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client or to a third person, or by the lawyer's own interests, unless:
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> > (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

¶7 According to the Commission, Johnson violated subsection (a)(1) of Rule 1.7 because his representation of Schuff adversely affected his relationship with Klemens and led to Johnson's terminating Klemens as a client. Rule 1.7 requires lawyers to foster and protect client loyalty. *Grievance Committee of Bar v. Rottner* (Conn. 1964), 203 A.2d 82, 84-85. "Loyalty is an essential element in the lawyer's relationship to a client." Rule 1.7, Comment 1, Model Rules of Professional Conduct (2001). "The duty of loyalty is 'perhaps the most basic of counsel's duties.'" *State v. Jones* (1996), 278 Mont. 121, 125, 923 P.2d 560, 563

3

(quoting *Strickland v. Washington* (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674).  One commentator expressed this duty thusly:

> The reasons for the basic rigor of Rule 1.7(a) are readily discernable. It is intuitively obvious that parties with conflicting interests who are concurrently represented by the same lawyer face significant risks that the lawyer will act disloyally to one client or the other, or that confidential information concerning one client will be "leaked" to the other . . . .
> . . . .
>
> When Rule 1.7(a) applies, it commands that a lawyer "not represent" the clients in question.  This means that a lawyer must not accept a second client if the directly adverse conflict is known in advance, and must withdraw if the conflict is discovered after the concurrent representation has been undertaken.

Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 11.3 (3rd ed. 2003).

¶8     Here, we hold that Johnson was not reasonable in his belief that his simultaneous representation of Klemens and Schuff would not adversely affect his relationship with Klemens.  The Commission noted, and we agree, that it is untenable for an attorney to contend that no conflict of interest exists where the attorney asserts on behalf of one client via pleadings filed in court that another client negligently caused the death of the first client's spouse.

¶9     The Commission also determined that Johnson violated subsection (a)(2) of Rule 1.7 because he did not obtain the informed consent of Gene Cantley, president of Klemens, as to the firm's representation of Schuff.  Johnson asserts that the Commission erred in this regard because under Rule 1.7, he was not obligated to obtain Cantley's consent for the firm *to represent Schuff*, but only to obtain Cantley's consent to the continued representation of Klemens *while also representing Schuff*.  On the contrary, as the Commission notes in its

4

brief on appeal, any sensible reading of Rule 1.7 reveals that, faced with a conflict, an attorney must obtain from each affected client consent to that attorney's representation of the *other* affected client.

¶10 In addition, Johnson's expert witness Professor Robert Aronson, described the concept of informed consent in this way:

> [A]ttorneys who undertake to represent parties with divergent interests owe the highest duty to each to make full disclosure of all facts and circumstances necessary to enable the parties to make an informed decision. This "full disclosure" should include areas of potential conflict, the desirability of seeking independent legal advice, the fact that information from either of the parties will not be confidential with respect to the other party, and the course of action the attorney will take if an actual conflict arises. "Consultation" or "full disclosure" implies communicating "all of the facts and implications" of an attorney's representation of multiple clients and any circumstances which might cause a client to question the undivided loyalty of the lawyer.

Robert H. Aronson & Donald T. Weckstein, *Professional Responsibility in a Nutshell* 226 (2d ed. 1991).

¶11 Because Johnson is a seasoned attorney with many years of experience, he should have recognized that Rule 1.7's requirement of consent "after consultation" requires, at a minimum, that Johnson explain Rule 1.7 to Cantley; discuss the ramifications of Johnson's representation of Schuff; and inform Cantley that he had the right to withhold consent. However, Johnson did none of these things, thus it is clear that Johnson did not sufficiently inform Cantley of Johnson's obligations under Rule 1.7.

¶12 Johnson maintains that Cantley is a shrewd and capable businessman who is experienced with legal matters and that Cantley did consent by continuing to send Klemens's legal business to Johnson's firm. However, as the Commission points out in its brief on

appeal, Klemens's efforts to remain connected to the firm do not demonstrate consent to the firm's representation of Schuff, rather it illustrates the very thing that Rule 1.7 exists to protect--a client's trust in his or her own lawyer. Moreover, Cantley's knowledge of the legal system is irrelevant to Johnson's violation of Rule 1.7. The obligations of a lawyer as set forth in the M.R.P.C. must be followed regardless of a client's level of legal sophistication. Furthermore, the evidence confirms that the amended complaint was not served upon Klemens for ten months after Johnson's conversation with Cantley about Johnson's representation of Schuff, thus it is not surprising that Klemens continued using Johnson's firm.

¶13 The Commission also determined that Johnson violated subsection (b) of Rule 1.7 because he learned directly from Cantley that Klemens replaced circuit breaker panels at the gas station where the accident occurred. Johnson recorded this information in a memorandum and placed it in the Schuff file. However, if Johnson had not placed that memorandum in the Schuff file, it could be argued that he was not diligent in his representation of Schuff. Hence, Johnson's simultaneous representation of Klemens and Schuff materially limited his responsibilities to each.

¶14 In his defense, Johnson contends that he reasonably relied upon the District Court's ruling denying Klemens's motion to disqualify the firm in believing that he had complied with the M.R.P.C. However, we have ruled that a district court is not the place for deciding alleged violations of the M.R.P.C. *Schuff*, ¶¶ 33-37; Art. VII, § 2(3) of the Montana Constitution. The Commission correctly determined that the issue of whether Johnson

6

violated Rule 1.7 was never within the scope of the District Court's inquiry and that court's decision not to disqualify the firm did not relieve Johnson from his ethical violations.

¶15    Additionally, Johnson misinterprets Comment 2 to Rule 1.7 of the Model Rules of Professional Conduct (2001), when he argues that Rule 1.7 permits a lawyer to choose to continue to represent one of the affected clients after a conflict arises.  Comment 2 to Rule 1.7 provides in pertinent part:

> If such a conflict arises after representation has been undertaken, *the lawyer should withdraw from the representation.*  See Rule 1.16.  Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9.  [Emphasis added.]

Thus, both Rule 1.7 and Comment 2 require an attorney to withdraw from the representation creating a conflict, unless the conditions of Rule 1.7(a) and (b) are met.  Further, Comment 2 simply advises that after the lawyer withdraws, if the lawyer then seeks to represent one of the affected clients in the future and on a matter unrelated to the representation that forced the lawyer to withdraw, the former client provisions found in Rule 1.9 apply.

¶16    Here, Johnson and his firm dropped Klemens in favor of Schuff.  They contend that they did so because of Schuff's extreme dependency on Johnson and the firm.  However, there is nothing in Rule 1.7 excusing an attorney from its provisions because an affected client becomes dependent on the attorney.  "A firm may not drop a client like a hot potato, especially if it is in order to keep happy a far more lucrative client ."  *Picker International, Inc. v. Varian Associates, Inc.* (N.D. Ohio 1987), 670 F.Supp. 1363, 1365.  Such behavior is unethical and violates an attorney's duty of loyalty.  *International Longshoremen's Ass'n,*

7

*Local Union 1332 v. International Longshoremen's Ass'n* (E.D. Pa. 1995), 909 F.Supp. 287, 293; *Santacroce v. Neff* (D. N.J. 2001), 134 F.Supp. 2d 366, 370.

> So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it . . . .
>
> Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.

*Flatt v. Superior Court* (Cal. 1994), 885 P.2d 950, 957-58 (citations omitted). Clearly Johnson and the other members of the firm breached their duty of loyalty to Klemens when they terminated their relationship with Klemens in favor of Schuff.

¶17     Johnson maintains that he did not intentionally or recklessly violate Rule 1.7. However, nothing in the M.R.P.C. implies that a lawyer has to knowingly violate the M.R.P.C. in order to be subject to discipline. Johnson knowingly failed to obtain Cantley's consent; Johnson refused to withdraw from representing Schuff after it became clear that Cantley refused to consent; and Johnson deliberately terminated Klemens, his own client, when Cantley refused to consent. An attorney cannot be relieved from liability for ethical violations just because the attorney did not mean to commit them. As the Commission points out in its brief on appeal, the public's confidence in the integrity of the Bar lies in the enforceability of the rules designed to protect the public from unprofessional behavior. If lawyers could avoid discipline for ethical lapses simply by claiming they did not intend to violate the M.R.P.C., then the M.R.P.C. would be impossible to enforce.

8

¶18    Johnson also contends that his right to due process was violated by various actions of the Commission including:  considering a letter submitted by counsel appointed by Klemens's insurer that castigated Johnson and other members of his firm; allowing Special Counsel to amend his report to recommend formal complaints against Johnson and the others; conducting Johnson's hearing separately from the hearing for the other members of his firm involved in this action; allowing Commissioner Mary Jo Ridgeway to participate in the hearings when her husband is District Judge Gary Day who wrote a dissenting opinion in the *Schuff* decision that was harshly critical of Johnson and the other members of his firm; and depriving Johnson and the others of the benefit of the entire Commission file on these matters.

¶19    The Commission's work on this matter is entitled to a presumption of honesty and fairness.  *See Goldstein v. Commission on Practice*, 2000 MT 8, ¶ 27, 297 Mont. 493, ¶ 27, 995 P.2d 923, ¶ 27, *cert. denied sub nom Albers v. Supreme Court*, 531 U.S. 918, 121 S.Ct. 276, 148 L.Ed.2d 201 (2000).  To overcome that presumption, Johnson must show specific facts and circumstances that make the risk of unfairness to him intolerably high or that show he has been denied his due process rights. *Goldstein*, ¶ 27.  Johnson's allegations, however, are insufficient to meet his burden.  First, counsel's letter castigating Johnson and the other members of his firm was not offered as evidence during the disciplinary proceedings and the Commission did not use counsel's letter as the basis for any of its findings or conclusions. Second, Special Counsel's recommendations regarding discipline were amended at the request of Special Counsel, not the Commission.  Third, it was within the Commission's discretion to conduct a separate hearing for Johnson.  Fourth, Commissioner Ridgeway

9

recused herself from participating in this action and she was not present at the hearing. Fifth, Rule 13, M.R.L.D.E. (2001), requires that all Commission deliberations remain confidential.

¶20 Johnson further contends that inordinate delay and laches mandate dismissal of these proceedings because more than ten years have passed since this conflict arose. The defense of laches cannot apply without a showing of lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. *Coalition for Canyon Preservation v. Bowers* (9th Cir. 1980), 632 F.2d 774, 779 (citation omitted). Here, the Commission and Special Counsel have at all times acted diligently in investigating and prosecuting this matter. We referred this matter to the Commission on December 27, 2000. Special Counsel commenced an investigation in January 2001. The Commission voted to file formal charges against Johnson and several other members of his firm in June 2001. Johnson and the others received copies of the complaints in October 2001. The complaints were filed in March 2002 and an evidentiary hearing was conducted in November 2002.

¶21 Furthermore, Johnson suffered no prejudice by the delay in this matter. His testimony at the November 2002 hearing reflects clear memories about the facts that form the basis for the allegations against him. Moreover, most of the evidence of Johnson's ethical violations comes from his own records including the firm's correspondence and billing records as well as a memorandum about Klemens's work at the gas station. In addition, the transcript of the 1993 disqualification hearing recounts the facts surrounding the firm's conflict between Klemens and Schuff and Johnson's reaction to that situation. Therefore, the defense of laches is inapplicable here.

¶22 As his final argument, Johnson maintains that several mitigating factors set forth in the 1991 ABA Standards for Imposing Lawyer Sanctions are present in this case and that those factors mandate reducing any sanctions to be imposed or withholding sanctions entirely. These mitigating factors include the absence of any selfish or dishonest motive on Johnson's part; the fact that both clients actively sought representation by Johnson and his firm; Johnson's desire to serve the needs of both clients; Johnson's reputation for good character and high competence as an attorney; the fact that Johnson has practiced law in Montana for more than thirty years without any prior disciplinary record before the Commission; and the delay in bringing and processing disciplinary proceedings.

¶23 Both the Commission and this Court have taken these mitigating factors into consideration. Nevertheless, we agree with the Commission's recommendation and hold that public censure is appropriate in this case for the following reasons: 1) it will inform Johnson of the gravity of his transgressions; 2) it will deter similar unethical conduct by other Montana attorneys; 3) it will serve notice to all Montana lawyers that the M.R.P.C. are to be taken seriously and consulted in order to avoid situations that would erode public confidence in the Bar. Therefore,

¶24 IT IS HEREBY ORDERED that the Commission's Common Findings of Fact and Conclusions of Law insofar as they pertain to Johnson and the Commission's individual Findings of Fact, Conclusions of Law and Recommendation as to Johnson, are adopted in full.

11

¶25    IT IS FURTHER ORDERED that Johnson appear before this Court in Helena, Montana, on the 24th day of February, 2004, at 10:00 a.m., for the administration of a public censure.

¶26    IT IS FURTHER ORDERED that Johnson shall pay his pro rata share (one-fifth) of the costs incurred by the Commission associated with the prosecution of this matter and the other cases referred to above, in accordance with the attached statement of the Secretary of the Commission on Practice.  Johnson shall have ten days from the date of service of this Order in which to file with the Commission any objections to the costs assessed against him. Should he so desire, Johnson may also request a hearing before the Commission on the question of the reasonableness and necessity of said costs.  Following the filing of any such objections and a hearing before the Commission, the Commission shall file with this Court its recommendations as to said costs along with any objections thereto filed by Johnson, after which this Court will enter a final Order regarding the costs of these proceedings.

¶27    IT IS FURTHER ORDERED that the Clerk of this Court shall serve a copy of this Order upon Johnson; William Conklin, Johnson's counsel; John Warren, Chairperson of the Commission; Sharon Parrish, Secretary of the Commission; Benjamin R. Graybill, Special Counsel for the Commission; the Clerks of the District Courts of the State of Montana for service upon the District Judges of the State of Montana; the Clerk of the Federal District Court of the District of Montana; the Clerk of the Circuit Court of Appeals of the Ninth Circuit; and the Executive Director of the State Bar of Montana.

DATED this 26th day of January, 2004.

/S/ KARLA M. GRAY

12

/S/ JAMES C. NELSON
/S/ JIM RICE

/S/ MIKE SALVAGNI
District Judge Mike Salvagni sitting for
Justice Jim Regnier

/S/ TED L. MIZNER
District Judge Ted L. Mizner sitting for
Justice Patricia O. Cotter

13

Justice John Warner Concurring and Dissenting.

¶28 I concur in the decision of the Court that Respondent, Charles R. Johnson, violated Rule 1.7 of the M.R.P.C., when he undertook dual representation of two clients who were directly adverse. As stated by this Court, Johnson's actions constituted a violation of the rules in connection with the lawsuit between his two clients, Klemens and Schuff, because he was not reasonable in his belief that his simultaneous representation of both would not adversely affect his relationship with Klemens, he did not adequately discuss the matter with Klemens, and he dropped Klemens as a client in favor of Schuff.

¶29 I respectfully dissent from the decision that a public censure, as recommended by the Commission on Practice, is the appropriate sanction.

¶30 Rule 9, Rules for Lawyer Disciplinary Enforcement, sets out the forms of discipline for violations of the M.R.P.C., and the criteria for application as follows:

**RULE 9. DISCIPLINE AND SANCTIONS**

**A. Forms of Discipline.** Discipline may take one or more of the following forms:

(1) Disbarment.

(2) Suspension from the practice of law for a definite period of time or for an indefinite period of time with a fixed minimum term.

(3) Public censure.

(4) Private admonition.

(5) Probation.

. . . .

(8) Assessment of the cost of proceedings . . . .
**B. Discipline Criteria.** The following factors shall be considered in determining discipline to be recommended or imposed:

14

(1) The duty violated;

(2) The lawyer's mental state;

(3) The actual or potential injury caused by the lawyer's misconduct;  and

(4) The existence of aggravating or mitigating factors.

¶31   In my view, upon a consideration of the entire record of this case, the guidance we have from our past decisions, and after an analysis of the criteria to be considered in imposing discipline as set forth in Rule 9B, the more appropriate censure is a private admonition before the Commission, and payment of the cost of the proceedings.

¶32   The conduct by Johnson leading to the conclusion that he violated the rules all occurred over 10 years ago in connection with one case.  The conduct does involve loyalty to a client, one of the most important obligations a lawyer has in our adversary system of justice.  Still, it is clear from the record that Johnson had no intent to violate the rules, or to cause harm.

¶33   The client, a business in Great Falls, was aware of the dual representation as was the District Court in which the litigation was filed.  Though the client was not adequately informed of the possible ramifications of Johnson's dual representation, the client was represented by separate counsel in the Schuff case.  Also, as the result of a hearing in which the District Court had determined that there was insufficient reason to disqualify Johnson and his firm because of the conflict of interest, Johnson believed, albeit mistakenly, that he was not in violation of the Rules of Professional Conduct.

¶34   The District Court, the Commission on Practice, and this Court have all found that there was no harm caused to either client by Johnson's conduct.

¶35    There are other mitigating factors in Johnson's case.  He was admitted to the bar of this state in 1972.  There is no record of any previous violations of the M.R.P.C.  The conduct leading to this proceeding occurred in 1992.  There has been no infraction of the rules since.

¶36    Importantly, there is no indication whatever that further malefaction is likely.  All indications are to the contrary.  There is no need to protect the citizenry from Johnson and by all accounts he still has much to offer the bar and the citizens of Montana.

¶37    To call an attorney into the well of this Court in open session and administer a public censure is indeed a severe sanction.  Such has been visited upon an attorney found to have failed to properly represent a client which led to great financial and emotional distress to the client.  *In re Graveley* (1990), 246 Mont. 58, 805 P.2d 1263.  Public censure was ordered in *In re Wyse* (1984), 212 Mont. 339, 688 P.2d 758, when a lawyer was found in contempt of court and guilty of a misdemeanor crime for knowing statutory violation when he surreptitiously gained access to files to which he was not lawfully entitled.  Public censure was also ordered for a lawyer who, over the course of time, refused to accept the decisions of the courts in which he practiced, filed frivolous appeals and other actions, engaged in undignified and discourteous conduct and made accusations against judges with no showing that such were true.  *In re Johnson* (1979), 182 Mont. 486, 597 P.2d 740.  Each unfortunate case that comes to this Court must be considered individually.  However, there appears no prior instance where public censure has been administered to an attorney for a single infraction in over 30 years of practice, when no harm was done to a client, and there is no indication that further problems will arise.

¶38　　The dereliction of Johnson cannot, nay must not, be condoned.  Nor can he simply be forgiven.  Still, a fair consideration of the circumstances mandates the lesser sanction of a private admonition and payment of the costs of this proceeding.

DATED this 26ᵗʰᵉ day of January 2004.

/S/ JOHN WARNER

I join in the foregoing concurrence and dissent of Justice Warner.

/S/ BLAIR JONES
District Judge Blair Jones sitting for
Justice W. William Leaphart